Dwayne Eugene WEST, Petitioner,

v.

STATE of Alaska, Respondent.

No. A–10150.

Court of Appeals of Alaska.

Jan. 22, 2010.

Krista Maciolek, Assistant Public Advocate, Palmer, and Rachel Levitt, Public Advocate, Anchorage, for the Petitioner.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

The defendant in this case, Dwayne Eugene West, was found guilty of first-degree robbery following a jury trial, but he has not yet been sentenced. First-degree robbery is a class A felony,[1] and West is a first felony offender for purposes of Alaska's presumptive sentencing law. Under the applicable sentencing statute, AS 12.55.125(c), West's presumptive sentencing range hinges on whether he personally possessed or used a firearm during the commission of the offense. West faces a sentencing range of 5 to 8 years if he did not carry a firearm, but a sentencing range of 7 to 11 years if he carried a firearm.[2]

In a pre-sentencing pleading, West asserted that he had a Sixth Amendment right to jury trial with respect to this issue of fact. The superior court agreed that, under *Blakely v. Washington*,[3] West was entitled to a jury trial on the question of whether he personally carried a firearm during the robbery—because, if this issue were decided in the government's favor, West would face a higher presumptive sentencing range.

But when the superior court offered West a jury trial on this issue, West responded that any renewal of the proceedings would violate the double jeopardy clause. West asserted that the superior court was obliged to sentence him within the lower presumptive range, as if the government had attempted but had failed to prove that he personally carried a firearm. When the superior court rejected West's double jeopardy argument and, instead, ordered a jury trial on the disputed sentencing factor, West petitioned this Court to review the superior court's ruling, and we granted review.

1. AS 11.41.500(b).

2. Compare AS 12.55.125(c)(1) and AS 12.55.125(c)(2)(A).

3. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

We now hold that, in this situation, it does not violate the double jeopardy clause to hold a jury trial on the disputed factual issue.

*A more detailed explanation of the facts of this case*

West and four co-defendants were brought to trial on six counts of first-degree robbery (one count for each of six victims) and seven counts of third-degree assault (again, one count for each of seven victims).[4] West was convicted of these crimes, but (as we have explained) West raised a *Blakely* issue and a double jeopardy issue while he was awaiting sentencing—and, thus, he has not yet been sentenced.

For the offense of first-degree robbery, West faces a presumptive sentencing range of 7 to 11 years' imprisonment if he personally carried a firearm during the robberies. *See* AS 12.55.125(c)(2)(A). In contrast, West faces a lesser presumptive range—5 to 8 years' imprisonment—if he did not personally carry a firearm during the robberies. *See* AS 12.55.125(c)(1).[5]

(See *Dailey v. State*, 675 P.2d 657, 661–62 (Alaska App.1984), where this Court held that, even though a defendant can be convicted of armed robbery based on an accomplice's use or possession of a firearm, the enhanced presumptive term provided in subsection (c)(2)(A) applies to the defendant's sentencing only if the defendant personally used or possessed the firearm.)

The problem in West's case arises from the fact that West's trial jury was not asked to decide whether West personally carried a firearm. The jury's verdicts simply state that the jurors found West guilty of first-degree robbery.

The jury was instructed, in pertinent part, that one element of first-degree robbery was that "in the course of [the] taking or attempted taking [of property], or [in the] immediate flight after the taking [or] attempted taking, the defendant or another participant was armed with a deadly weapon". Thus, the jury's verdicts represent a finding that, among West and his cohorts, at least one of them carried a firearm, but the verdicts do not identify which of the robbers were armed.

In her pre-sentencing memorandum, West's attorney took the position that West had to be sentenced using the lower presumptive range (*i.e.*, 5 to 8 years). The defense attorney argued that, under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), West was entitled to have a jury decide the factual issue of whether West personally carried a firearm during the robberies. The defense attorney further argued that, because the jury had not been asked to decide this issue of fact, the superior court was required to sentence West as if the jury had decided this issue in West's favor.

The State responded by arguing that West was subject to the higher sentencing range (*i.e.*, 7 to 11 years) because *Blakely* was satisfied, even without a specific jury verdict on this factual issue. The State pointed out that the evidence at trial clearly showed that West had carried a firearm, and that West's attorney (in arguing the case to the jury) had essentially conceded this fact.

The trial judge, Superior Court Patrick J. McKay, agreed with the defense position that, under *Blakely*, West was entitled to

---

**4.** AS 11.41.500(a)(1) and AS 11.41.220(a)(1), respectively.

**5.** Here are the pertinent portions of AS 12.55.125(c):

[A] defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to a definite term within the following presumptive ranges, subject to adjustment as provided in AS 12.55.155–12.55.175:

(1) if the offense is a first felony conviction and does not involve circumstances described in (2) of this subsection, five to eight years;

(2) if the offense is a first felony conviction ... and the defendant possessed a firearm, used a dangerous instrument, or caused serious physical injury or death during the commission of the offense, or knowingly directed the conduct constituting the offense at a uniformed or otherwise clearly identified peace officer, fire fighter, correctional employee, emergency medical technician, paramedic, ambulance attendant, or other emergency responder who was engaged in the performance of official duties at the time of the offense, seven to 11 years[.]

have a jury decide this issue of fact. At the same time, Judge McKay agreed with the State's assertion that West's attorney had essentially conceded this factual issue during the trial, and that, in any event, the evidence presented at the trial established beyond a reasonable doubt that West had carried a firearm. Nevertheless, Judge McKay concluded that if West now wanted a jury decision on this issue, there was still time to give him one (since final judgement had not yet been entered).

Rejecting West's contention that any renewed litigation of this issue would violate the double jeopardy clause, Judge McKay decided to call a new jury to decide the question of whether West personally carried a firearm during the robberies.

West petitioned this Court to review the judge's ruling. We granted review and ordered briefing.

*Why we agree with the superior court that West is entitled to a jury trial on the issue of whether he carried a firearm during the robbery*

■ Under the pre–2005 version of Alaska's presumptive sentencing law, a felony defendant's applicable presumptive term normally hinged on the number of the defendant's prior felony convictions. *See* former AS 12.55.125(c), (d), (e), and (i). There was one exception to this rule: former AS 12.55.125(c)(2) specified an enhanced presumptive term for a first felony offender convicted of a class A felony if the defendant carried a firearm during the commission of the offense, or caused serious physical injury to a person, or knowingly directed their conduct against a police officer, fire fighter, corrections officer, or emergency responder.

Once the defendant's presumptive term was ascertained, a sentencing judge had the authority to depart from that presumptive term based on the aggravating and mitigating factors listed in AS 12.55.155(c) and (d).

In that pre–2005 law, the legislature specified that the sentencing judge would determine the number of the defendant's prior felony convictions and would also determine aggravating factors. The legislature further

specified that, when these issues were disputed, the applicable burden of proof for prior felony convictions was "beyond a reasonable doubt", while the burden of proof for aggravating factors was "clear and convincing evidence". *See* former AS 12.55.145(d) and AS 12.55.155(f), respectively.

However, the legislature failed to specify the burden of proof that applied to the sentence enhancement factors listed in AS 12.55.125(c)(2) for first felony offenders convicted of a class A felony. In *Huf v. State*, 675 P.2d 268 (Alaska App.1984), this Court was asked to clarify this aspect of presumptive sentencing law. We concluded that, because the factors listed in 125(c)(2) performed the same function as a defendant's prior felony convictions (that is, because the presence or absence of these factors determined the applicable presumptive term of imprisonment), these factors should be governed by the same burden of proof that applied to prior felony convictions: proof beyond a reasonable doubt. *Huf*, 675 P.2d at 273–74. Seven years ago, the State asked us to re-examine this question, and we re-affirmed our decision in *Huf*. *See Tuttle v. State*, 65 P.3d 884, 891 (Alaska App.2002).

We decided one further issue in *Huf*. The defendant in *Huf* argued that the factors listed in AS 12.55.125(c)(2) were actually elements of his offense, and thus he was entitled to litigate these factors to a jury (rather than to the sentencing judge). We rejected this contention. We held that AS 12.55.125(c)(2) was not an addendum to the definition of all class A felonies, but was rather a true sentencing provision—and, thus, a sentencing judge could resolve disputes concerning the sentence enhancement factors listed in AS 12.55.125(c)(2) just as the judge could resolve disputes concerning the defendant's prior felony convictions. *Huf*, 675 P.2d at 271–73.

See also *Burks v. State*, 706 P.2d 1190, 1192 (Alaska App.1985), where we stated that these sentence enhancement factors "operate independently of the elements of the underlying offense".

In March 2005, the Alaska Legislature amended the presumptive sentencing law in an attempt to comply with the Sixth Amendment right to jury trial announced by the

United States Supreme Court in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). For purposes of litigating the aggravating factors listed in AS 12.55.155(c), the legislature divided these factors into two groups, depending on the legislature's assessment of whether the *Blakely* right to jury trial applied to a particular aggravating factor.

Under the current version of AS 12.55.155(f), some aggravating factors—the ones covered by subsection (f)(2)—must be litigated to a jury and proved beyond a reasonable doubt. The remaining aggravating factors—the ones listed in subsection (f)(1)—are still governed by the old rule: they are litigated to the sentencing judge, and the burden of proof remains "clear and convincing evidence".

Again, however, the legislature failed to specify the identity of the fact-finder (sentencing judge or jury) who would resolve disputes concerning the sentence enhancement factors listed in AS 12.55.125(c)(2), and the legislature likewise failed to specify the burden of proof that would govern that litigation.

This second omission (the legislature's failure to specify a burden of proof) is not critical, because our decision in *Huf* requires the same burden of proof that *Blakely* requires: proof beyond a reasonable doubt. But the legislature's first omission—its failure to specify the identity of the fact-finder— is much more important.

As we have already explained, in *Huf* we rejected the contention that defendants were entitled to a jury trial on the sentence enhancement factors listed in AS 12.55.125(c)(2). This aspect of *Huf* needs to be re-examined in light of *Blakely.*

Both parties to this appeal agree that Judge McKay reached the correct resolution of this issue when the judge concluded that, under *Blakely,* West is entitled to a jury trial on the issue of whether he carried a firearm during the robbery. We, too, agree that the *Blakely* right to jury trial applies to the factors listed in AS 12.55.125(c)(2).

■ This is not because we view these factors as "elements" of class A felonies. We

stand by what we said in *Huf* and *Burks:* these factors are true sentencing factors. But as we explained in *State v. Dague,* 143 P.3d 988 (Alaska App.2006), the *Blakely* right to jury trial regarding a particular issue of fact does not hinge on whether that issue of fact is classified as an "element" or a "sentencing factor" under state law. Rather, a defendant's right to jury trial hinges on the consequences of resolving that issue of fact in the government's favor. 143 P.3d at 999–1000. If resolution of the issue of fact in the government's favor means that the defendant will face a greater maximum sentence, or a higher presumptive term or presumptive range of imprisonment, then, under *Blakely,* the defendant has a right to jury trial on that issue. *Id.* at 1002.

If the sentence enhancement factors listed in AS 12.55.125(c)(2) are resolved in the government's favor, a defendant is subjected to a higher presumptive range of imprisonment than the defendant would otherwise face as a first felony offender convicted of a class A felony. Accordingly, the *Blakely* right to jury trial applies to these factors.

*Why we conclude that it does not violate the double jeopardy clause to convene a new jury to decide the question of whether West carried a firearm during the robbery*

■ As we explained above, Alaska's presumptive sentencing statutes specify the procedures and the applicable standards of proof for litigating a defendant's prior felony convictions and for litigating the aggravating and mitigating factors listed in AS 12.55.155(c) and (d), but the presumptive sentencing statutes do not specify a procedure for litigating the sentence enhancement factors listed in AS 12.55.125(c)(2), nor do they specify a standard of proof to govern that litigation.

Up until now, the law on these subjects was contained in this Court's decisions in *Huf* and *Tuttle.* Under *Huf* and *Tuttle,* the sentence enhancement factors were to be decided by the sentencing judge, and the applicable burden of proof was "beyond a reasonable doubt".

In the superior court, West challenged this law; he asserted that the *Blakely* right of jury trial applied to the sentence enhancement factors listed in AS 12.55.125(c)(2)—and that, therefore, the factual issue of whether he personally carried a firearm during the commission of the robbery had to be decided by a jury rather than by the superior court at the sentencing hearing. Judge McKay agreed with West and ordered a jury trial on the disputed factual issue—leading to this appellate litigation, because West takes the position that any new proceedings would subject him to a second jeopardy in violation of the double jeopardy clause.

West analogizes his situation to a case in which the State neglects to seek a jury verdict on a necessary element of the defendant's crime, and then asks for a second trial to rectify this error. According to West, any second trial in these circumstances will violate the double jeopardy clause. This argument is mistaken for two reasons.

The first flaw in West's argument is that, even if we were ready to overturn existing precedent—our decisions in *Huf* and *Burks*—and hold that West's personal possession of a firearm was an essential element of his offense, the double jeopardy clause would *not* bar the State from trying West a second time to rectify the fact that West's trial jury was not instructed on this additional element of the offense.

In *Steve v. State*, 875 P.2d 110 (Alaska App.1994), we explained the general rule that applies to situations where a defendant attacks a criminal conviction on the ground that the trial jury was not asked to decide all the necessary elements of the offense:

> [I]f the defendant convinces an appellate court that the trial court adopted an erroneous definition of the offense or misallocated the burden of proof, this conclusion necessarily undermines the assumption that the government had its fair day in court. We can not know what evidence the State might have presented at [the defendant's] trial if it had known [the true elements of the offense or had known that]

the State bore the burden of proof on the [disputed] issue[.]

*Steve*, 875 P.2d at 115. Thus, if the defendant prevails on such a motion, the defendant is "entitled to a new trial, not an outright acquittal". *Id.*

We applied this rule in *Hurd v. State*, 22 P.3d 12 (Alaska App.2001). The defendant in *Hurd* was convicted of kidnapping and coercion. He argued on appeal that the jury had not been instructed on a necessary element of kidnapping: the requirement that the restraint that formed the basis of the kidnapping charge had to be distinct from the restraint that was incidental to the accompanying charge of coercion. *Hurd*, 22 P.3d at 19–20. We agreed that the jury had not been properly instructed on the type of restraint required to support a separate kidnapping conviction, and we therefore reversed Hurd's kidnapping conviction—but we ruled that "[t]he State [could] try Hurd again for this crime." *Id.* at 20.

We also applied this rule in *Collins v. State*, 977 P.2d 741 (Alaska App.1999). The defendant in *Collins* was convicted of second-degree weapons misconduct, AS 11.61.195(a)(1), for possessing a firearm during the commission of a felony drug offense. The jury was instructed that Collins could be convicted based simply on the fact that he possessed a firearm (hidden under his mattress) at the same time that he committed a felony drug offense.[6] We held that this offense required proof of an additional essential element: an articulable "nexus" between the defendant's possession of the firearm and the defendant's commission of the felony drug offense.[7] Nevertheless, we held that Collins was not entitled to an acquittal, but rather to a new trial at which the State would be given the opportunity to prove the required nexus. *Collins*, 977 P.2d at 752.

In other words, if the flaw in West's case had been that the jury instructions omitted or misdefined an essential element of the offense of first-degree robbery, West would not be entitled to claim an acquittal under

---

6. *Collins*, 977 P.2d at 751 (Mannheimer, J., concurring).

7. *Id.* at 753 (Mannheimer, J., concurring).

the double jeopardy clause. Rather, he would be entitled to a new trial.

This same rule applies to situations where the elements of the offense are properly defined, but the trial judge erroneously removes one of the elements from the jury's consideration and decides this element him- or herself. In *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the defendant was accused of violating 18 U.S.C. § 1001 by making false statements on Department of Housing and Urban Development loan documents. This federal statute required proof that the defendant's false statements were material to the activities or decisions of the Department.[8] The trial judge mistakenly concluded that the question of materiality was to be decided by the court rather than by the jury. The trial judge then instructed the jurors,

> The issue of materiality ... is not submitted to you for your decision[,] but rather is a matter for the decision of the court. You are instructed that the statements charged in the indictment are material statements.

*Gaudin,* 515 U.S. at 508, 115 S.Ct. at 2313.

Even though Gaudin's trial attorney did not object to this jury instruction, a panel of the Ninth Circuit concluded that this instruction was plain error—because the court concluded that, under its precedents, the element of materiality was clearly a jury issue.[9] The Ninth Circuit, sitting *en banc,* affirmed the panel's decision.[10] The government then successfully petitioned the Supreme Court to hear the case, but the Supreme Court affirmed the Ninth Circuit's conclusion that a defendant charged with violating 18 U.S.C. § 1001 had the right to trial by jury on the element of materiality. *Gaudin,* 515 U.S. at 522–23, 115 S.Ct. at 2320.

For present purposes, the significant aspect of *Gaudin* is not its holding that federal defendants are entitled to a jury determination on whether a false statement is material. Rather, the significant aspect of *Gaudin* is the remedy that the defendant received for

the trial judge's error of removing this element of the offense from the jury's consideration. Gaudin did not receive an acquittal, but rather a new trial. *See United States v. Gaudin,* 997 F.2d 1267, 1273 (9th Cir.1993) (the three-judge panel decision), *United States v. Gaudin,* 28 F.3d 943, 952 (9th Cir. 1994) (the *en banc* decision).

The second flaw in West's argument is that, under Alaska law, it is clear that the issue of whether West personally carried a firearm during the commission of the robbery is *not* an element of the first-degree robbery charge.

Under the pertinent portion of the first-degree robbery statute, AS 11.41.–500(a)(1), the State was required to prove only that West *or any other participant in the robbery* was armed with a deadly weapon. This finding was sufficient to establish West's guilt of the crime.

True, the question of whether West will face the higher or lower presumptive sentencing range for this crime hinges on whether West personally carried a firearm during the robbery. But as we declared in *Huf* and *Burks,* the sentence enhancement factors listed in AS 12.55.125(c)(2) are not elements of all the underlying class A felonies to which the statute applies.

This fact—that the sentencing enhancement factors listed in AS 12.55.125(c)(2) are not elements of West's offense—distinguishes West's case from the decisions in *Steve, Hurd, Collins,* and *Gaudin.* In those cases, the underlying problem was that, because of errors in the definition of the offense or errors in procedure, the jury failed to render a verdict on every necessary element of the offense. Here, the situation is different. A properly instructed jury has found West guilty of first-degree robbery, and the question is whether he will face a presumptive sentencing range of 5 to 8 years' imprisonment or 7 to 11 years' imprisonment.

Under Alaska's pre-existing law on this point—that is, under our decisions in *Huf*

---

8. *Id.,* 515 U.S. at 508, 115 S.Ct. at 2313.

9. *See United States v. Gaudin,* 997 F.2d 1267, 1271–73 (9th Cir.1993).

10. *See United States v. Gaudin,* 28 F.3d 943, 944 (9th Cir.1994) (*en banc* ).

and *Tuttle*—the issue of whether West personally carried a firearm during the robbery was an issue to be resolved by the sentencing judge. West's attorney believed, based on the United States Supreme Court's decision in *Blakely*, that West was entitled to a jury trial on this factual issue, and that it was now unconstitutional for the sentencing judge to resolve this factual issue. As we explained earlier in this opinion, we agree that this view of the law is correct. But West's attorney did not raise this issue until after West's trial was over, when the parties were awaiting sentencing.

If West had not raised this *Blakely* issue until after he was sentenced—that is, if West had raised this jury trial claim for the first time on appeal, as a claim of plain error—we would not have ordered the superior court to resolve the disputed sentencing factor in West's favor. Rather, we would have remanded West's case to the superior court for a jury trial on the disputed sentencing factor (unless we concluded that, given the trial evidence, it was clear that no reasonable jury could resolve this issue of fact in West's favor).[11]

Similarly, if West had raised his jury trial claim before or during his trial, and if the trial judge (relying on *Huf*) had refused to allow the trial jury to decide the question of whether West personally carried a firearm during the robbery, we would have reversed and directed the superior court to grant West a jury trial on this sentencing factor— but we would not have ordered the superior court to resolve the disputed sentencing factor in West's favor.

West's procedural situation is different from either of these examples. He raised his jury trial claim after his trial was over, but before his sentencing. Nevertheless, we perceive no significance in this procedural distinction.

West has argued convincingly that he is entitled to a jury trial on the issue of whether he personally possessed a firearm during

the robbery—and that Alaska's existing procedure for litigating this issue (*i.e.*, the procedure we adopted in *Huf* and *Tuttle* of having the issue resolved by the sentencing judge) is unconstitutional under *Blakely*. The remedy for this error is to have a jury decide the disputed sentencing factor. Judge McKay therefore acted properly when he ordered this remedy.

The decision of the superior court is AFFIRMED.

---

**11.** See *Washington v. Recuenco*, 548 U.S. 212, 219–222, 126 S.Ct. 2546, 2551–53, 165 L.Ed.2d 466 (2006), and *Lockuk v. State*, 153 P.3d 1012, 1016–17 (Alaska App.2007), both holding that if a *Blakely* error is harmless beyond a reasonable

doubt—that is, if there is no reasonable possibility that a jury would have found in the defendant's favor if the issue had been submitted to a jury—then the error does not require alteration or vacation of the defendant's sentence.